# EXHIBIT 7

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> ROBERT F. KENNEDY, JR., et al., <br><br> *Defendants.* | Civil Action No.: 25-12019 |

## DECLARATION OF TRINIDAD NAVARRO

I, Trinidad Navarro, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

1. I am the Commissioner of the Delaware Department of Insurance ("DDOI"). I have served in this role since January 2017.

2. DDOI administers the laws of Delaware as they pertain to the protection of the insurance consumer through the regulation of the insurance industry. The work of DDOI includes: monitoring financial solvency; licensing insurance companies and producers; reviewing and approving rates and forms; overseeing the takeover and liquidation of insolvent insurance companies and the rehabilitation of financially troubled companies; and investigating and enforcing state laws and regulations pertaining to insurance.

3. Delaware operates a federally-facilitated exchange through healthcare.gov in partnership with the federal government. Under this model, Delaware is responsible for plan management, stakeholder outreach, and consumer assistance functionality for the marketplace.

4. I am familiar with the information in the statements set forth below through personal knowledge and from documents and information that have been provided to and reviewed by me.

5. I submit this Declaration in support of the States' Motion for a Preliminary Injunction.

6. The Final Rule would increase costs to Delaware by removing a group of relatively young and healthy individuals from the pool of insureds participating in health coverage in our State. Over 20% of the current marketplace enrollees in Delaware are aged 25 and younger. In 2024, 31% of Delaware enrollees were 55 years of age or older. Whereas younger, healthier enrollees may opt to be uninsured, these participants will likely remain, creating adverse selection in the marketplace.

7. The Final Rule makes several changes that adversely impact Delaware's risk pool, including, but not limited to, the following.

8. The Final Rule requires the Federal marketplace to conduct pre-enrollment eligibility verification for at least 75% of new enrollments through the SEPs, including the SEPs that can be triggered by events such as a move to a new geographical area or the birth of a child. Compared to verification of SEPs triggered by the loss of minimum coverage, which was required by the prior policy, verification of other SEPs often cannot employ electronic data sources for auto-verification to the same extent, and therefore rely on consumers to submit supporting documentation. As a result, verification of all SEPs is likely to discourage younger, healthier individuals—who are less likely to navigate complex paperwork requirements successfully during life changes—from enrolling, undermining the stability of the risk pool and driving up costs for everyone.

9. The Final Rule requires the Federal marketplace to impose a $5 monthly charge on a subset of automatically reenrolled consumers: those who have $0 premiums because of the APTC that they qualified for. That charge would be levied until the consumer actively re-enrolls in coverage. This provision will pose an unjustified and duplicative reporting burden on consumers in our State who do not have changes to their account. In Delaware, 9,539 of our consumers have sufficient APTC to reduce their premiums to $10 or below. In DDOI's experience, a substantial fraction of those enrollees has sufficient APTC to reduce their premiums to $0. Under the Final Rule, automatic re-enrollees with such fully subsidized premiums would be charged $5 until they undertook an affirmative action to confirm their re-enrollment. The imposition of this unexpected

premium, when the consumer is accustomed to paying $0 out-of-pocket premiums, will cause attrition and lead to lower enrollment in Delaware. Imposing an unnecessary administrative hurdle will cause many of these consumers to lose coverage and is likely to worsen the risk pool by disproportionately causing younger and healthier consumers to lose coverage, which would lead to higher premiums for both subsidized and unsubsidized enrollees.

10. Prior to the Final Rule, exchange plans accepted the self-attestation of an enrollee who claimed eligibility by projecting annual household income at or above 100% of the FPL. This self-attestation policy was designed to ensure that the lowest-income enrollees, who are often younger and healthier, are not discouraged from entering the risk pool due to paperwork burdens. The prior policy also recognized the challenges that low-income individuals, who may have seasonal employment, be independent contractors, or participate in the gig economy, face in accurately estimating their annual income. Many low-income individuals experience significant fluctuations in their earnings over the course of the year. The Final Rule's elimination of this practice is an administrative barrier to enrollment that will likely cause younger and healthier consumers to drop out of the marketplace. That, in turn, will worsen the risk pool and increase premiums for both subsidized and unsubsidized consumers.

11. The *de minimis* thresholds in the Final Rule limit Delaware's ability to be the primary enforcer of plan generosity and metal-rating provisions. This will affect Delaware's federally-approved 1332 Waiver by shifting the metal levels of local plans and could reduce or eliminate the 15.3% in premium savings predicted by CMS. We have already seen carriers filing rates that reflect much smaller premium savings for next year than were anticipated.

12. The Final Rule acknowledges that the changes it makes will result in a decrease in enrollment in the ACA marketplace exchanges of up to 1.8 million people nationwide.

13. As part of its efforts to make health insurance more affordable, Delaware has implemented, pursuant to 16 *Del. C.* § 9903(g), a state-based and state-administered reinsurance program. To fund the operation of the reinsurance program, pursuant to 18 *Del. C.* § 8703(b), DDOI collects from carriers a 2.75% assessment on "all amounts used to calculate the [carrier's] premium tax

liability or the amount of the [carrier's] premium tax exemption value for the previous calendar year."

14. Because health insurance carriers receive a monthly premium payment for each individual enrolled in their insurance plans, the total monthly premium collected by a carrier, which is used to calculate their premium tax liability, decreases as the number of enrollees decreases. And the total reassessment collected by Delaware correspondingly decreases as the number of enrollees decreases.

15. Thus, for each individual who ceases to be enrolled in a health benefit plan in Delaware, including plans sold on the marketplace, the State loses revenue, whether through premium tax or through the value of the assessment collected under the reinsurance program.

16. The ACA mandates that certain individual and small group health plans cover a set of Essential Health Benefits (EHBs) which must be equal to the scope of benefits provided under a typical employer plan and may not have any annual or lifetime dollar limit under state plans.

17. Per HHS, the items and services covered must come from the following ten benefit categories: (1) ambulatory patient services; (2) emergency services; (3) hospitalization; (4) maternity and newborn care; (5) mental health and substance use disorder services including behavioral health treatment; (6) prescription drugs; (7) rehabilitative and habilitative services and devices; (8) laboratory services; (9) preventive and wellness services and chronic disease management; and (10) pediatric services, including oral and vision care.

18. Gender dysphoria is a specific diagnosis with relevant criteria and standards of care. Certain treatments for a gender dysphoria diagnosis fall into the above benefit categories.

19. The ACA and its effectuating regulations permit latitude to the states in determining how EHBs are defined. Accordingly, states submit their "benchmark" plans to HHS for approval. EHBs are a minimum standard, and benchmark plans can choose to offer additional health benefits, like vision, dental, and medical management programs (e.g., weight loss).

20. Each state maintains a benchmark plan on file with HHS, against which private insurers must compare plans to ensure compliance with the standards set forth therein. Further, if a state

has not updated its benchmark plan to match federal requirements, private insurers must also review plans for compliance with federal EHB mandates.

21. Delaware's EHB benchmark plan can be found here: https://www.cms.gov/marketplace/resources/data/essential-health-benefits#Delaware. An EHB benchmark plan may not necessarily contain all voluntary coverages offered by carriers, or all mandated coverages required by a state.

22. Delaware's Gender Identity Nondiscrimination Act of 2013 (the "Gender Identity Nondiscrimination Act") prohibits discrimination based on gender identity in employment, housing, public accommodations, and insurance.

23. The Gender Identity Nondiscrimination Act added nondiscrimination protections to two provisions of the Delaware Insurance Code. When these laws are read together, they unequivocally prohibit the denial, cancellation, termination, limitation, refusal to issue or renew, or restriction, of insurance coverage or benefits thereunder on the basis of a person's gender identity or transgender status, or because the person is undergoing gender transition.

24. Private insurance plans offered in Delaware generally cover gender-affirming care. Because of that, marketplace plans offered in Delaware also cover gender-affirming care. Their plans for 2026 including such care have already begun review processes according to federally-set timelines.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of July, 2025, in Lewes, Delaware.

Trinidad Navarro
Insurance Commissioner
Delaware Department of Insurance