EXHIBIT 23

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, et al.,<br><br>　　　　　　Defendants. | DECLARATION OF JANE BEYER<br><br>Civil Action No.: 25-12019 |

DECLARATION OF
JANE BEYER

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
360-753-6200

1  I, JANE BEYER, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

2. 1. I am the Senior Health Policy Advisor at the Washington State Office of the Insurance Commissioner (OIC) located in Washington State. I earned an undergraduate degree in Political Science and a Juris Doctor degree from the University of North Carolina at Chapel Hill. I am licensed to practice law in Washington State and Washington D.C. I have been employed as the Senior Health Policy Advisor since January 2017. I served as staff to the Washington State House of Representatives from 1988 to 1994, and again from 1999 to 2012. In that role, I staffed the health care and human services committees. I was Washington State's Medicaid Director from 1994 to 1997 and served as the Washington State Behavioral Health Commissioner from 2012 to 2015.

3. 2. The OIC regulates fully insured health plans offered in the state of Washington. This includes individual and small group health plans sold both on and off our state Health Benefit Exchange, which was established under the Affordable Care Act (ACA). The Health Benefit Exchange has provided the means for individuals to access health insurance coverage, cost-sharing reductions, and advance premium tax credits since 2014. OIC reviews and must approve all individual and small group health plans prior to their being sold. To that end, each health insurer seeking to offer individual or small group health plan coverage must submit the details of their proposed health plan forms and networks, as well as proposed rates for review. For Plan Year (PY) 2026, those documents were filed with OIC on May 15, 2025. Washington State's ACA Essential Health Benefits benchmark plan, which sets minimum benefit standards for individual and small group health plans, includes coverage of gender-affirming care. State law requires that health insurers offer gender-affirming care in their fully-insured individual, small group, and large group health plans, as well as the state's public employee health plans. OIC is responsible for ensuring that health insurers comply with these laws in their fully-insured health plans.

DECLARATION OF
JANE BEYER

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
360-753-6200

3. I am familiar with the information in the statements set forth below through personal knowledge and from documents and information that have been provided to and reviewed by me.

4. I submit this Declaration in support of the States' Motion for a Preliminary Injunction.

5. Each health insurer seeking to offer individual or small group health plan coverage in Washington must submit the details of their proposed health plan forms and networks, as well as proposed rates, for review to OIC annually. For Plan Year (PY) 2026, those documents were filed with OIC on or before May 15, 2025. A carrier cannot offer an individual or small group health plan until its form, rate and network filings have been approved by OIC (Wash. Rev. Code §§ 48.18.110, 48.43.733, 48.44.020, 48.46.060). The purpose of form and rate filing review is to ensure that all individual and small group health plans comply with applicable federal and state laws, including the requirement under 42 CFR 154.301 that states have effective rate review programs and Wash. Rev. Code § 48.18.110(2) that generally requires that rates must be reasonable. OIC staff engage in extensive review of health plan filings and rates. An analyst checklist[1] includes all federal and state health plan design requirements and is used by OIC staff to ensure that a plan filing complies with applicable law. OIC actuarial staff undertake extensive review of proposed individual and small group health plan rates to ensure that rates are actuarially sound and are not unreasonable in relation to the benefits provided by the health plan. This process often involves multiple interactions with carriers in which they must respond to questions and make needed revisions to their forms, networks and rates to comply with applicable law.

6. To ensure that the Washington Health Benefit Exchange can certify health plans to be offered as Qualified Health Plans on the Health Benefit Exchange and be ready for open

---

[1] OIC analyst tools, including the checklist, are publicly available at OIC's website: https://www.insurance.wa.gov/insurers-regulated-entities/rate-and-form-filing/rate-filing-speed-market-tools-health-life-and-disability.

DECLARATION OF JANE BEYER

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
360-753-6200

enrollment beginning November 1, 2025, the Health Benefit Exchange has set a date of September 4, 2025, for OIC to complete its review of individual market Exchange health plans.

7. Adoption of the Marketplace Integrity Rule three months following submission of proposed health plan forms and rates to OIC presents major challenges to OIC's timely review of health plan filings, to the carriers seeking to offer qualified health plans on the Exchange and to the Health Benefit Exchange. The amended rule at 45 CFR 156.115 prohibiting inclusion of gender-affirming care (called "sex trait modification" in the final rule) as an essential health benefit will very likely require carriers to submit revised health plan rates to OIC. Carriers will need at least ten days to two weeks to identify those claims that are considered "sex trait modification procedures" as defined in 45 CFR 156.400, so that they can revise their rates to reflect removal of those services from the essential benefits and prepare revised filing documentation. OIC will be confronted with reviewing and finalizing these now revised rates before the September 4, 2025, deadline established by the Washington Health Benefit Exchange. The OIC anticipates that it will need three to four weeks to complete this process, given that rates from twelve carriers must be reviewed and finalized.

8. At the same time, the exclusion of gender-affirming care from Washington's essential health benefit benchmark plan will force OIC to develop, in an extremely short period of time, a mechanism to defray the cost of providing gender-affirming care under 45 CFR 155.170. Washington state has never had to defray the cost of benefits outside of the essential health benefits benchmark plan. OIC will need to determine how carriers will calculate the cost of the services, likely by estimating future claims costs, how carriers will report that information to OIC, and how OIC will fund these costs and compensate the carriers for these claims costs.

9. The ACA mandates that certain individual and small group health plans cover a set of Essential Health Benefits (EHBs) that must be equal to the scope of benefits provided

DECLARATION OF
JANE BEYER

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
360-753-6200

under a typical employer plan and may not have any annual or lifetime dollar limit under state plans.

10. Per the Health and Human Services Department (HHS), the items and services covered must come from the following ten benefit categories: (1) ambulatory patient services, (2) emergency services, (3) hospitalization, (4) maternity and newborn care, (5) mental health and substance use disorder services including behavioral health treatment, (6) prescription drugs, (7) rehabilitative and habilitative services and devices, (8) laboratory services, (9) preventive and wellness services and chronic disease management, and (10) pediatric services, including oral and vision care.

11. The ACA and its effectuating regulations permit latitude to the states in determining how EHBs are defined. Accordingly, states submit their "benchmark" plans to HHS for approval. EHBs are a minimum standard, and benchmark plans can choose to offer additional health benefits, like vision, dental, and medical management programs (e.g., weight loss).

12. Each state maintains a benchmark plan on file with HHS, against which private insurers must compare plans to ensure compliance with the standards set forth therein. Further, if a state has not updated its benchmark plan to match federal requirements, private insurers must also review plans for compliance with federal EHB mandates.

13. In November 2024, the Centers for Medicare and Medicaid Services (CMS) approved an updated Essential Health Benefits Benchmark Plan (EHB-BP) for Washington State. The new benchmark plan is effective January 1, 2026. Washington State's EHB-BP meets all ACA requirements for the EHBs. In reviewing Washington State's application for its EHB-BP update, CMS required the state to expand access to certain services that had previously been limited based on an individual's age or health condition. These changes were required in order to ensure that the state's EHB-BP was non-discriminatory, as required by 45 C.F.R. § 156.125 (2022).

14. The updated approved EHB-BP explicitly includes coverage of gender-affirming care, as does Washington State's current EHB-BP. This requirement stems from both OIC's interpretation of Section 1557 of the ACA and Wash. Rev. Code § 48.43.0128, which explicitly prohibits discrimination in health plans based upon race, color, national origin, disability, age, sex, gender identity, or sexual orientation and prohibits a health carrier from denying or limiting coverage for medically necessary gender-affirming treatment.

15. As noted above, Wash. Rev. Code § 48.43.0128 prohibits fully insured health plans, including individual, small group, and large group health plans from denying or limiting coverage of gender-affirming care. Many of the state's largest employers, including [Amazon], [Microsoft], [Starbucks], and [T-Mobile USA],[2] offer transgender-inclusive health care benefits. Additionally, Washington's public employee benefit plans, the Public Employees Benefits Board and School Employees Benefits Board programs, which cover, in total, approximately 700,000 people in Washington State, cover gender-affirming care as required by state law. The appropriate analysis regarding the typical employer plan is not whether most other states include gender-affirming care in their benchmark plans or the number of enrollees utilizing this care nationwide, but instead how this care is being offered by plans within each state. Because gender-affirming care is a benefit offered by typical employer plans in Washington State, marketplace plans offered in Washington State also cover gender-affirming care.

16. Requiring states to exclude these otherwise covered services from EHB definitions would require Washington State, for the first time, to bear the cost of defrayal. This

---

[2] Premera Blue Cross, Gender Affirming Benefit Information (Jan. 1, 2024) available at: https://www.premera.com/documents/033046.pdf; Premera Blue Cross, Microsoft Gender Affirming Benefit Information (Feb. 2, 2022) available at: https://www.premera.com/documents/031800.pdf; Starbucks, Medical, Dental & Vision available at: https://www.starbucksbenefits.com/en-us/home/health-benefits/medical-dental-vision/; Premera Blue Cross, T-Mobile Gender-Affirming Benefit Information (July 9, 2024) available at: https://www.premera.com/documents/059461.pdf; *see also* Beth Umland & Eliza Hilfer, Health Benefits that Matter to the LGBTQ+ Community: By the Numbers, Mercer.com ("Half of all large employers covered gender affirmation surgery in 2022, as did nearly three-fourths of those with 20,000 or more employees.") available at: https://www.mercer.com/en-us/insights/us-health-news/health-benefits-that-matter-to-the-lgbtq-community/#:~:text=Gender%20affirmation%20benefits,reconstructive%20procedures%20(60%20percent).

is because premium amounts that would otherwise be attributed to EHB services and covered by carriers in response to the state coverage mandates would be put back on states. Based upon the language in the notice of proposed rulemaking, OIC estimates a cost of at least $1 million annually to defray the cost of gender-affirming care.

17. The Washington State legislature has appropriated state-only funding for state fiscal year 2026 to supplement premium subsidies offered through ACA advance premium tax credits. The Rule will require Washington State to contribute additional funding to make up the difference for the lost federal subsidies for the portion of premiums attributable to non-EHB services.

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

SIGNED this 7th day of July, 2025, at Olympia, Washington.

JANE BEYER
Senior Health Policy Advisor
Washington State Office of the Insurance Commissioner