# EXHIBIT 14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STATE OF CALIFORNIA, et al.,

    *Plaintiffs*,

v.

ROBERT F. KENNEDY, JR., et al.,

    *Defendants*.

Civil Action No. 25-12019
Judge

**DECLARATION OF SARAH ADELMAN**

I, Sarah Adelman, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am the Commissioner of the New Jersey Department of Human Services ("DHS"). I have been employed as Commissioner since January 2021.

2. I submit this Declaration in support of Plaintiffs' challenge to the Final Rule issued by the U.S. Department of Health and Human Services and Center for Medicaid Services entitled "Patient Protection and Affordable Care Act; Marketplace Integrity and Affordability."

3. I have compiled the information in the statements set forth below through personal knowledge, through DHS personnel who have assisted me in gathering this information from our agency, and on the basis of documents that have been reviewed by me. I have also familiarized myself with the Final Rule in order to understand its immediate impact on DHS and New Jersey.

1

### The New Jersey Department of Human Services

4. DHS is New Jersey's largest agency, serving approximately 2.1 million New Jersey residents. DHS administers social services for many people in New Jersey including but not limited to older residents, individuals, and families with low incomes; people with developmental disabilities, or late-onset disabilities; people who are blind, visually impaired, deaf, hard of hearing, or deaf-blind; parents needing child care services, child support and/or healthcare for children; people who are dealing with addiction and mental health issues; and families facing catastrophic medical expenses for their children. Through DHS's eight divisions, the agency provides numerous programs and services designed to give eligible individuals and families assistance with economic and health challenges. These programs include publicly funded health insurance through NJ FamilyCare, which includes New Jersey's Children's Health Insurance Program, Medicaid, and Medicaid expansion populations. New Jersey residents of any age who qualify for NJ FamilyCare may be eligible for free or low-cost healthcare coverage that covers doctor visits, prescriptions, vision, dental care, mental health and substance use services, and hospitalization.

### NJ FamilyCare and Related Healthcare Programs

*NJ FamilyCare*

5. NJ FamilyCare is a publicly-funded health insurance. NJ FamilyCare includes, but is not limited to, the following programs funded by both the federal government and the State: Medicaid and the Children's Health Insurance Program ("CHIP"). NJ FamilyCare provides comprehensive healthcare coverage for a wide range of services, including primary care, hospitalization, laboratory tests, x-rays, prescriptions, mental health care, dental and vision care, preventive screenings, mental health services, and substance use services.

6. Eligibility for NJ FamilyCare health insurance programs, including eligibility for Federal-State Medicaid and CHIP, depends in part on age, immigration status, and household income.

7. Income eligibility for NJ FamilyCare generally depends upon income and family size. In general, adults who are over the age of 18 and under the age of 65 meet the income eligibility requirement for Federal-State Medicaid if their household's modified adjusted gross income is less than 138% of the federal poverty level.

8. New Jersey also operates programs specifically directed at individuals who cannot access federally funded health insurance through NJ FamilyCare, including the Supplemental Prenatal and Contraceptive Program and the Medical Emergency Payment Program, among others.

*New Jersey Supplemental Prenatal and Contraceptive Program*

9. New Jersey's Supplemental Prenatal and Contraceptive Program ("NJSPCP") is operated by DHS and is a limited-benefit program. It provides prenatal and family-planning services to women who meet income-eligibility guidelines but do not qualify for NJ FamilyCare due to their immigration status, and do not have any other health insurance coverage. However, NJSPCP does not provide complete healthcare coverage, such as for hospital visits or labor and delivery services.

10. Emergency medical services for pregnant women who do not qualify for NJ FamilyCare insurance programs due to immigration status are covered through the Medical Emergency Payment Program, which is discussed below.

11. NJSPCP covers outpatient prenatal and family planning services for women including, but not limited to: prenatal care, prenatal-related services, birth control, pregnancy tests, family-planning counseling, and family-planning lab tests.

12. To be eligible for NJSPCP, a patient must meet all criteria below, N.J.A.C. 10:72-3.10:

   a. Women age 19-64;

   b. New Jersey resident;

   c. Income-eligibility criteria under NJ FamilyCare; and

   d. Ineligible for NJ FamilyCare due to immigration status.

13. Patients can apply for NJSPCP by seeing a medical provider at a hospital, outpatient clinic, Federally Qualified Health Center, or Family Planning Center. If the provider participates in the NJSPCP program, they will provide application assistance. Patients can receive NJSPCP benefits at any hospital, clinic, Federally Qualified Health Center, or Family Planning Center that accepts fee-for-service Medicaid. Patients can also have their prescriptions filled at most pharmacies. NJSPCP coverage terminates at the end of each fiscal year, and eligible individuals must reapply after July 1st of each year to renew their benefits.

14. If a patient is eligible for NJSPCP, then the services covered through the program are of no cost to the patient. The State pays providers directly for the covered services—the provider submits claims to the State and is reimbursed by the State.

15. NJSPCP is funded exclusively by the State of New Jersey.

16. In Federal Fiscal Year 2024, the period from October 2023 through September 2024, New Jersey spent $36 million on the NJSPCP program.

17. If a New Jersey pregnant woman, who for example lacked lawful immigration status, was previously on the exchange, is no longer able to obtain prenatal and family-planning services covered through their Marketplace insurance, and her current financial circumstances are such that she qualifies for NJSPCP, then she would need to rely on NJSPCP for their care, causing New Jersey to incur additional costs.

*Medical Emergency Payment Program*

18. New Jersey's Medical Emergency Payment Program pays for emergency services, including labor and delivery, for New Jersey residents age 19 and older who meet income-eligibility guidelines but do not qualify for Medicaid through NJ FamilyCare solely due to immigration status. The Medical Emergency Payment Program does not provide complete healthcare coverage, but only treatment that is provided at an acute care hospital for an emergency medical condition and labor and delivery of a baby in any setting.  Emergency medical conditions are covered only if the patient is experiencing severe symptoms that would place the patient's health in serious danger, seriously damage the patient's bodily functions, or seriously damage a body part or organ.

19. The Medical Emergency Payment Program is subject to income-eligibility criteria based on the federal poverty level. *See* 42 U.S.C. § 1396b(v) (allowing states to pay for emergency medical services for individuals who do not otherwise meet the immigration requirements for Medicaid).  Under 42 C.F.R. 435.406, New Jersey residents who meet the income-eligibility criteria and whose immigration status prevents them from accessing coverage through other programs are eligible for the Medical Emergency Payment Program. Therefore, individuals may access the Medical Emergency Payment Program even if, for example, they are undocumented or do not qualify for NJ FamilyCare due to immigration status.

20. Certain New Jersey residents, due to their immigration status, who lack private health insurance may be eligible for the Medical Emergency Payment Program.

21. Certain New Jersey pregnant women who lack private health insurance and are income-eligible would likely need to access the Medical Emergency Payment Program to obtain coverage for labor and delivery services.

22. During Federal Fiscal Year 2024, New Jersey spent over $67 million on the Medical Emergency Payment Program.

## Impacts of Health Insurance on Public Health

23. Increased access to health insurance provides significant benefits to public health. Enrollment in NJ FamilyCare has a positive impact on public health since individuals enrolled are more likely to receive preventative care services, reducing the need for more intensive health care treatments, including emergency care. This coverage means individuals are more likely to receive treatment, limiting the spread of infectious diseases across the state.

24. Access to healthcare, particularly to primary care, makes New Jersey residents healthier and communities stronger, and is a fiscally responsible investment in the future of New Jersey children.

25. Higher enrollments in NJ FamilyCare also reduces the financial burden on health care providers from providing care to uninsured individuals and ensures that households are not left with medical bills they are unable to pay. Having insurance coverage also makes it so that New Jersey has a reduced strain on uncompensated care burden on hospitals.

26. Without access to insurance coverage, New Jersey can anticipate a lower engagement with the health care system which can impact public health by leading to a decrease use of vaccines and other preventative medicine, causing increased risk for certain immunocompromised residents and increased expenses for the state in outreach, as well as emergency care for uninsured residents.

## The Final Rule Will Irreparably Harm New Jersey

27. The Final Rule would harm New Jersey as it would likely render affordable health insurance coverage unavailable to certain New Jersey residents, thereby contributing to negative health

outcomes. Without access to affordable health insurance via the state insurance marketplace, New Jersey residents are less likely to seek preventive care, resulting in more costly emergency room visits.

28. If New Jersey residents are no longer eligible to obtain health insurance through the State's exchange, then New Jersey will likely incur increased costs resulting from paying for certain health care services provided to eligible individuals through other New Jersey programs.

29. If New Jerseyans are no longer able or eligible to obtain health insurance through the State's exchange, then New Jersey will likely incur increased costs resulting from paying for certain health care services provided to eligible New Jerseyans under the Medical Emergency Payment Program.  See "Patient Protection and Affordable Care Act; Marketplace Integrity and Affordability," 90 Fed. Reg. at 13,010 (observing that the "majority" of individuals who lose exchange or basic health plan coverage would become uninsured, which would " result in costs … to States to provide limited Medicaid coverage for the treatment of an emergency medical condition to individuals who have a qualifying medical emergency and who become uninsured as a result of this rule").

30. Should the Final Rule go into effect, even a temporary disruption in health insurance coverage would likely cause significant harm to New Jersey's state agencies, healthcare providers, and residents seeking healthcare services.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of July, 2025, in Trenton, New Jersey.

*[signature: Sarah Adelman]*

_____

Sarah Adelman
Commissioner
New Jersey Department of Human Services

8