# EXHIBIT 25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STATE OF CALIFORNIA, et al.

          *Plaintiffs*,

v.

ROBERT F. KENNEDY, JR., et al.,

          *Defendants.*

Civil Action No.: 25-12019

**DECLARATION OF SARAH SMITH**

I, Sarah Smith declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

1. I am the Director of Public Affairs at the State of Wisconsin's Office of the Commissioner of Insurance (OCI) located in Madison, Wisconsin. I have been employed as OCI Director of Public Affairs since November 2020.

2. Wisconsin law gives the Commissioner broad powers and duties to protect the public and to ensure that the insurance industry responsibly meets the insurance needs of Wisconsin citizens.

3. Wis. Stat. chs. 631 and 632 set out minimum standards for regulating the terms of all insurance contracts. These chapters grant OCI authority related to regulating the issuance of insurance coverage (i.e. ensuring insurable interest and consent), material misrepresentations, policy forms, mid-term alternations or nonrenewals, and more.

4. The federal McCarran-Ferguson Act of 1945 granted states the ability to regulate insurance, established insurance licensing requirements, and preserved state laws of insurance.

5. Wisconsin state law and regulation grants OCI regulatory authority over Disability (accident & health) insurance which is generally defined as any type of insurance that covers policy

claims involving: (1) medical and surgical expenses; (2) indemnities for loss of income due to accident or health; (3) accidental death and disability; (4) hospital care; and (5) long-term care.

6.  The Affordable Care Act (ACA) of 2010 made a number of reforms including prohibiting lifetime dollar limits and annual dollar limits on essential health benefits (EHBs), required coverage of specific preventive services with no cost-sharing, guaranteed issue of health insurance policies, and prohibiting preexisting condition limitations.

7.  Under the ACA, an insurance plan sold on the health insurance marketplace must be certified by the health insurance marketplace as a qualified health plan (QHP). The operations of QHPs are regulated by OCI for the purposes of form filings, rate filings, and general insurance regulation.

8.  Pursuant to Wis. Stat. §§ 625.13 and 601.42, all health insurers authorized to write comprehensive health insurance, including QHPs, shall make initial and subsequent rate change filings with OCI. For PY (Plan Year) 2026, annual rate filings from QHPs were due on June 25, 2025, and filings for additional scenarios are due July 16, 2025. OCI will consider accepting rate filing revisions after July 16 when significant regulatory changes impacting the applicable plan year affect rates such as tax credit changes, cost-sharing reduction changes, and other provisions that will limit enrollment and destabilize the risk pool.

9.  OCI is also responsible for licensing insurance agents, Certified Application Counselors (CACs), and Navigators who assist individuals with enrollment. CACs can assist with applications for public assistance programs and compare health insurance plans sold on the health insurance exchange/marketplace for consumers. Navigators help individuals determine their eligibility for public assistance programs using the health insurance exchange/marketplace website. Navigators cannot legally provide advice to consumers about which health insurance plan to choose and are not permitted to sell insurance.

**Marketplace Integrity**

10. Wisconsin does not operate its own state-based exchange. Wisconsin residents purchase health insurance through the federal exchange, healthcare.gov. OCI works collaboratively with agents, Navigators, CACs, and other enrollment assistance entities to promote health insurance coverage options on the federal exchange throughout the year but primarily during the annual Open Enrollment Period (OEP). As funding for the state's federal Navigator entity is dramatically reduced by the Centers for Medicare and Medicaid Services (CMS), enrollment suffers while consumers are unable to access their free, unbiased assistance that would otherwise help the consumer navigate unexpected changes to the OEP timeframe. During the 2025 PY OEP, 8,100 Wisconsinites enrolled in coverage on the marketplace between December 15 and January 15. Shortening this deadline in a landscape without sufficient Navigator capacity could impact those thousands of individuals who enroll during that timeframe, which would be after the close of open enrollment under the Final Rule.

11. The Final Rule requires the Federal platform to conduct pre-enrollment eligibility verification for at least 75% of new enrollments through SEPs that are accessible following a triggering event, such as a loss of minimum essential coverage or a move to a new area. Enrollees claiming eligibility for a SEP will not be able to access coverage until their eligibility is verified, an administrative barrier which may lead to diminished enrollment particularly among younger and healthier enrollees. Because such enrollees are especially important to the overall health of the risk pool in our state, any barrier to enrollment risks destabilizing the risk pool.

12. Other changes like increasing max out-of-pocket costs, reducing actuarial values, and adding a $5 monthly penalty for those that do not actively re-enroll could encourage consumers to leave the market. The impact of these changes could result in fewer individuals enrolled in coverage in 2026 than in 2025. Resulting coverage losses could compromise the integrity and health of the risk pool, discourage carrier participation, lead to higher premiums, and destabilize state insurance markets.

13. During PY 2025, 99,560 Wisconsinites were auto re-enrolled and 41,815 of these individuals qualified for a premium of $10 or less. Auto re-enrollment applies to anyone who already has Marketplace coverage and doesn't take proactive action to change or end their coverage. If the insurer isn't offering any similar plans for the next year, HealthCare.gov re-enrolls the individual in a comparable plan with a different insurance company. If the individual qualifies for cost savings and they're not enrolled in a Silver plan, they may be re-enrolled in one that lowers their out-of-pocket costs. CMS's Final Rule will implement two substantive changes to the auto-reenrollment process. It establishes a $5 monthly premium for consumers who are automatically re-enrolled and previously qualified for a monthly premium of $0 until the consumer actively confirms eligibility and enrollment. During the 2025 OEP, 39% of consumers nationwide selected plans with a $0 monthly premium. Adding an arbitrary $5 monthly charge to the thousands of Wisconsinites who qualify for a $0 premium when auto re-enrolled will contribute to lower effectuation of coverage rates as consumers experience confusion or distrust upon receiving a bill for coverage they anticipated would be without a premium and do not continue with their coverage.

14. We estimate that the Final Rule will cause total enrollment in Wisconsin's individual marketplace to decrease and will also destabilize the healthy mix needed in the risk pool to hold premiums down, ultimately making healthcare less accessible as premiums become less affordable.

15. Wisconsin has achieved two record-breaking years in a row with the highest enrollment ever on the individual market. With the changes from the Final Rule in place, those trends are likely to reverse and our uninsured rate will grow. In 2022, the number of uninsured Wisconsinites was estimated to be 312,000. As hospitals and other facilities like Federally-Qualified Health Centers are required to provide certain types of care to those without an ability to pay, their costs will rise along with the uninsured population increasing on account of the Final Rule.

**Gender-Affirming Care EHBs.**

16. The ACA mandates that certain individual and small group health plans cover a set of Essential Health Benefits (EHBs) which must be equal to the scope of benefits provided under a typical employer plan and may not have any annual or lifetime dollar limit under state plans.

17. Per HHS, the items and services covered must come from the following ten benefit categories: (1) ambulatory patient services; (2) emergency services; (3) hospitalization; (4) maternity and newborn care; (5) mental health and substance use disorder services including behavioral health treatment; (6) prescription drugs; (7) rehabilitative and habilitative services and devices; (8) laboratory services; (9) preventive and wellness services and chronic disease management; and (10) pediatric services, including oral and vision care.

18. The ACA and its effectuating regulations permit latitude to the states in determining how EHBs are defined. Accordingly, states submit their "benchmark" plans to HHS for approval. EHBs are a minimum standard, and benchmark plans can choose to offer additional health benefits, like vision, dental, and medical management programs (e.g., weight loss).

19. Each state maintains a benchmark plan on file with HHS, against which private insurers must compare plans to ensure compliance with the standards set forth therein. Further, if a state has not updated its benchmark plan to match federal requirements, private insurers must also review plans for compliance with federal EHB mandates.

20. The plan established by OCI is the Wisconsin EHB Benchmark Plan. The Wisconsin EHB Benchmark Plan includes not only the 10 categories of benefits outlined by the ACA, but also the mandated benefits defined in Wisconsin law that require coverage for specific treatments for medical conditions.

21. The mandated benefits required by Wisconsin state law include coverage for: (1) newborn infants (2) adopted children (3) children with disabilities (4) grandchildren born to dependent children under the age of 18 who are covered by the policy (5) dependents under age 26 (6) health care services provided by certain nonphysician health care providers (7) nervous and mental disorders, alcoholism, and other drug abuse (8) home health care (9) skilled nursing care

5

(10) kidney disease (11) mammography (12) diabetes (13) lead screening (14) temporomandibular joint treatment (15) breast reconstruction following a mastectomy (16) anesthesia for certain dental procedures (17) maternity coverage for all persons covered under the policy if it provides maternity coverage for anyone (18) immunizations for children under the age of 6 (19) coverage of certain health care costs in cancer clinical trials (20) coverage of a student on medical leave (21) treatment for autism spectrum disorders (22) hearing aids, cochlear implants, and related treatment for infants and children (23) contraceptives and services (24) colorectal cancer screening

22. State selection of EHB since the ACA was established, and over time has given states greater flexibility in defining EHB that matches the variety of employer plans across the country and allows states to respond to the needs of their residents.

23. Even in states like Wisconsin, where gender-affirming care is not listed as its own category of EHB in the benchmark plan, many services that fall within the undefined category of "gender-affirming care," which may include prescription medications, surgical procedures, or mental health treatment, are covered by QHPs for cisgender policyholders and OCI would not permit QHPs to deny coverage of those same services to transgender policyholders.

24. Additionally, under Wisconsin law, "no insurer may unfairly discriminate among policyholders by … offering different terms of coverage except on the basis of classifications related to the nature and the degree of the risk." Wis. Stat. § 628.34(3). Further, it is unlawful to deny benefits or refuse coverage on the basis of sex. Wis. Admin. Code § Ins 6.55 (1976). An insured's gender identity is unrelated to the nature and degree of risk and denying benefits or coverage based on gender identity is unlawful discrimination based on the sex of the insured. Therefore, excluding coverage for health treatments that would otherwise be covered based on gender identity is unfairly discriminatory under Wisconsin law. The exclusion, limitation, or denial of covered benefits under individual or group health insurance based on an insured's gender identity is also a violation of Wis. Stat. §§ 632.746(10), and 632.748(2). Further, the exclusion, limitation, or denial of covered benefits based on an insured's gender identity by self-funded, non-federal governmental plans is a violation of Wis. Stat.§ 632.746 (10)(b)2.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  15   day of July, 2025, in Madison, Wisconsin.

_____
Sarah Smith
Director of Public Affairs
Wisconsin Office of the Commissioner of Insurance